Chester **W.** Adams, Appellee, v. Walter **G.** Critchlow, Trading as Walter **G.** Critchlow Organization, Appellant.

Opinion filed November 9, 1936.   Rehearing denied December 14, 1936.

HADLEY, WEAVER & WOODWARD, of Wheaton, and JOHN H. SEARING, of Carbondale, for appellant; CHARLES W. HADLEY and JOHN S. WOODWARD, of counsel.

LOYD M. BRADLEY, of Carbondale, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

The defendant is engaged in the manufacture and sale of automobile accessories, including a gasoline saving device known as Vix Humidifiers. His principal place of business was at Wheaton. September 4, 1934, he entered into a written contract with the plaintiff, whereby plaintiff was to become district manager in the sale of the humidifiers in eight counties in this State with his office at Carbondale.

Plaintiff instituted this suit basing his right of recovery upon the provisions of the contract and by the various counts in the complaint he sought to recover three different claims, viz., $1,250 which he had de-

posited with the defendant at the time of the execution of the contract, secondly for service rendered and for expense money. On a trial before the court, without a jury, a judgment was entered in favor of the plaintiff for $1,250 and defendant appeals from that judgment. The judgment order does not recite which claim the court allowed but both parties in their brief and argument concede that the judgment was for the deposit fund and since plaintiff does not urge his other claims in this court it is unnecessary to consider them. The pertinent provisions of the contract pertaining to the deposit fund are as follows: ''In consideration of the above appointment as exclusive Manager of Distribution for the said Humidifiers in the above described district, the Manager agrees to order and pay for 1250 Humidifiers to be ordered and delivered and·shipped as specified herein, either through his own efforts or those of his salesmen, dealers, distributors, agents, subservice stations, or canvassers, etc., and as evidence of good faith and to guarantee the performance of the terms of this agreement hereby deposits $1.00 each on 1250 Humidifiers amounting to a total of $1,250.00, receipt of which is hereby acknowledged. It is agreed that in the event the Manager fails to order and pay for 1250 Humidifiers, as herein specified, either through his own efforts or those of his salesmen, dealers, distributors, agents, subservice stations, canvassers, etc., that no liability shall attach to the deposit credit of the Manager for such deficiency.

''The above mentioned deposit is to be refunded to the Manager at the rate of $1.00 to be credited on the price of each Humidifier delivered to the Manager until the total amount deposited has been returned to the Manager in full. There is no time limit as to when these Humidifiers shall be taken to secure such refund credit.

''This agreement is entered into for a period of three (3) years from date, subject to the conditions hereof.''

By paragraph 13 defendant reserved the right to give written notice and cancel the contract, if plaintiff was for any reason unable to meet the requirements but he agreed to refund to plaintiff any of the deposit fund remaining to the credit of the plaintiff.

The material part of paragraph 25 is as follows: "The deposit credit of the Manager shall not be used for any purpose other than as specified in paragraphs seven and eight hereof, except that should the Manager wrongfully retain certain collections and receipts, a part of which should have been transferred to the Manufacturer up to the net amount thereof in accordance with the herein stipulated prices and discount, then under such circumstances the Manager's deposit may act as surety and the Manufacturer may deduct therefrom the net amount lawfully due him on such collections and receipts."

By paragraph 28 defendant agreed to pay four per cent interest, computed semiannually on any part of the deposit fund that had not been refunded, returned or withdrawn by virtue of orders placed and filled. Paragraph 29 provided that the contract was for three years subject to the condition that the plaintiff was through his agents, subagents and salesmen to sell humidifiers to the amount of $150 per week beginning October first and failure to comply with this requirement was to invalidate the exclusive rights and other privileges of the contract.

Paragraph 29½ is as follows: "In the event the Manager for any reason shall not be able to meet the minimum requirements of any part of this agreement pertaining to quota or number of Humidifiers to be ordered and paid for, then in that event, under no circumstances shall any part of the deposit credit be used for such deficiency."

Paragraph 30 is as follows: "In the event that circumstances should arise that would make it expedient

or necessary for the Manager to discontinue due to sickness, ill-health, accident, or for any reason whatsoever, upon notification in writing from the Manager, his heirs, executors, or assigns for the purpose of securing another man in his place to take over this agreement and continue with it on the same basis as set forth herein; and further, the Manufacturer, upon receipt of such notification from the Manager, will immediately readvertise to accomplish this same purpose as quickly as possible, in order that the Manufacturer business may be continued without interruption in the district specified herein; and the Manager agrees to co-operate with the Manufacturer with this same end in view by continuing his regular work as mentioned herein and filing a report every week until a transfer of this agreement is made. When said replacement and transfer is made during the life of this agreement the Manufacturers will refund to the Manager, his heirs, executors or assigns, any portion or part of the $1250.00 deposit referred to in clauses seven and eight hereof, that has not already been refunded, returned or withdrawn by virtue of orders placed.''

Soon after the execution of the contract plaintiff opened an office in Carbondale and by the middle of October plaintiff was writing defendant complaining that his orders were not being filled. October 16th plaintiff called at defendant's place of business in Wheaton and certain articles were furnished plaintiff and apparently the previous complaints were satisfied. Soon thereafter an exchange of letters followed wherein the discussion centers around the plaintiff's weekly allowance and the expense account. November 2, the plaintiff made a proposition of withdrawing his deposit fund and paying cash with each order, the defendant to meet the expense account and pay a bonus and if the defendant does not see fit to do this to consider the letter as his resignation. Defendant refused to

accept plaintiff's proposition and stated his intention of adhering to paragraph 30 of the contract and on November 7th suggested as an economical measure that the plaintiff move his office equipment to his residence and stated ''With reference to the Vixs which you have sold you should render an accounting and remit cover. Any merchandise and materials that are unpaid for should be returned for memorandum credit.''

Defendant furnished plaintiff a statement of account and on November 21 plaintiff returned certain merchandise and material and received credit for the same and a full settlement was made. Defendant testified on cross-examination that after this settlement was made plaintiff did not owe him anything.

Defendant contends that the deposit fund is not due until plaintiff finds some one who will buy plaintiff's contract, pay defendant $1,250 as a deposit fund and that upon that being done he will repay the deposit fund to plaintiff. He relies upon paragraph 30 as giving him that right. We do not so regard it. All paragraphs of the contract must be construed together and each of them given effect if possible. We are of the opinion that the deposit fund should have been returned to plaintiff. It was not intended that the deposit fund should be retained until a new manager had been selected unless the business was continued as a going concern.

It ceased to be a going concern when plaintiff returned the merchandise and material for credit as above noted. By clause 30 plaintiff was given the right to discontinue and give defendant notice in writing of his intentions to do so then the defendant was to take certain steps in procuring a successor and plaintiff's agreement was ''to co-operate with the manufacturer with this same end in view by continuing his regular work as mentioned herein.'' His regular work was to sell humidifiers and this had been made impos-

sible by the surrender of merchandise and material on November 21st and the settlement of the account.

Defendant contends that this case is controlled by *Rufi v. Critchlow,* where the Appellate Court of the Second District construed a contract with this defendant. The contract in the case at bar has several features that do not appear to have been in the contract in the *Rufi* case, particularly paragraph 29½ in this contract and there was no supplemental agreement in this case as there was in the *Rufi* case.

The judgment of the circuit court is affirmed.

*Affirmed.*